284 So.2d 355 (1973)
Mrs. Regina Rousseau, wife of/and Melvin F. CORREGE
v.
Robert E. WEBB et al.
Consolidated with No. 5536, Mrs. Gail C. Black, wife of/ and
H. Jimmerson Black
v.
Robert E. WEBB et al.
No. 5535.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 1973.
Rehearings Denied November 2, 1973.
Writ Refused December 19, 1973.
*356 Salvadore T. Mule, New Orleans, Bernhardt C. Heebe and Odom B. Heebe, Metairie, for plaintiff-appellant.
Hammett, Leake & Hammett, Frank B. Hayne, III, New Orleans, for defendant-appellant.
Many, Hartman, Lococo & Dwyer, H. Gordon Hartman, New Orleans, for plaintiffs-appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for defendants-appellees.
Before REDMANN, LEMMON and STOULIG, JJ.
LEMMON, Judge.
These consolidated cases arose from a two-car intersectional collision. Mrs. Gail Black, the driver of one vehicle, sued the other driver, Robert E. Webb, his employer, Bill Watson Ford, Inc. and the employer's insurer, Liberty Mutual Insurance Company. In the other suit Mrs. Regina Correge, a guest passenger in Mrs. Black's automobile, sued the same parties and joined Government Employees Insurance Company, Mrs. Correge's uninsured motorist carrier, in the event that the uninsured Mrs. Black was held liable for the accident.
After a trial on the merits, the trial court found Mrs. Black solely negligent and dismissed her suit. In the consolidated case the court rendered judgment in favor of Mrs. Correge against Government Employees, dismissing the other defendants. *357 Mrs. Black, Mrs. Correge, and Government Employees have appealed.
The accident occurred in early afternoon in good weather at the intersection of Gentilly Boulevard and Franklin Avenue in the City of New Orleans. The configuration of the intersection and pertinent measurements are shown on the following diagram prepared by an engineering expert:[1]
 The crucial issue on appeal is whether Mrs. Black entered the intersection on a green (or yellow) light rather than a red light, as found by the trial judge. In the fixed time cycle of the signal controlling Franklin Avenue traffic, the yellow signal followed green and showed for four seconds, whereupon the signal changed to red. No malfunction of the signal was reported on the day of the accident.
*358 Webb was traveling east on Gentilly Boulevard in the center lane of the three moving lanes. Mrs. Black was traveling south on Franklin Avenue in the right of the two moving lanes and approached the intersection from Webb's left.
The drivers presented different versions of the accident. Mrs. Black testified that the light was green as she approached the intersection and changed to yellow after she had entered the intersection and was crossing the westbound lanes of Gentilly Boulevard. Suddenly, she was struck in the right rear by a car which she did not see prior to impact. She stated that she was traveling between 30 and 35 miles per hour and did not reduce her speed prior to the collision.
Mrs. Black's mother, Mrs. Correge, was a passenger in the front seat. She testified that the light turned to yellow when they were crossing the neutral ground area. She also did not see Webb before the collision. Although she did not know how to drive, she estimated their speed at 30 to 35.
Two teenagers, who were waiting at a bus stop on the southwest corner of the intersection, corroborated Mrs. Black's version. The first testified that he saw Mrs. Black enter the intersection on a green light; that when she was halfway across, the light turned to yellow, and Webb jumped out from a stopped position; that the light was still yellow when the impact occurred; that there were no other cars on Gentilly except Webb's; that he did not notice the color of the light controlling Gentilly Boulevard traffic; and that Mrs. Black was traveling at about 30 miles per hour.
The other young man testified that the light was green as Mrs. Black approached the intersection, but turned to yellow "when she hit it"; that he did not see Webb prior to the collision, nor did he hear any braking or horns; that when the cars hit, the light had just turned red; and that Mrs. Black was going 25 to 30 miles per hour prior to the collision.
On the other hand, Webb testified that the light turned red as he approached the intersection; that he slowed and stopped at the back line of the pedestrian crosswalk; that while he was stopped, there was a Chevrolet on his left and a City Department of Streets dump truck on his right; that when the light turned green, he proceeded forward at a normal rate of speed; that the Chevrolet also started forward but braked suddenly and stopped just prior to his collision with Mrs. Black; and that as he started forward, he had a satisfactory view of the intersection to the front and at an angle to either side, but his view to the left was completely obstructed by the Chevrolet.
The truck driver testified that he stopped the loaded 2½-ton truck behind the crosswalk; that Webb was also behind the crosswalk; that when the light turned green, he started forward ahead of Webb in low or "grandma" gear, traveling about two miles per hour; that Webb proceeded from the stopped position slowly, passed him, and then collided with Mrs. Black, with whom he almost collided also; and that he didn't recall if there was a vehicle on Webb's left in the neutral ground lane.
A pedestrian, who was waiting at the same bus stop as the teenagers, verified that the City truck was in the lane closest to him and that the light was green for Gentilly Boulevard traffic when the truck pulled off from the stopped position. He stated that about ten vehicles were stopped on Gentilly Boulevard behind the pedestrian crosswalk, waiting for the light, and that none of them moved before the light changed. He was standing near the front of the truck, which prevented him from seeing Webb's vehicle when the traffic moved and from actually seeing the collision, although he saw the cars right after the collision occurred.
The trial judge found as a fact that Webb started from a stopped position *359 when the light turned from red to green. There is certainly much evidence in the record to support this factual conclusion, and although there is evidence to the contrary, we cannot find that the trial judge committed manifest error in making this finding of fact. We note that the principal contradictory evidence, furnished by one of the teenage bystanders, could have been inaccurate in that his view may have been obstructed to some extent by the City truck, the presence of which he denied.
The trial court also found as a fact that Mrs. Black entered the intersection when the light had already turned red and thus concluded that she was the sole cause of the accident. We also find that the evidence adequately supports this factual determination.
If Mrs. Black had entered the intersection (as she testified) just before the light turned to yellow and was traveling at a speed of 30 to 35 miles per hour, then she necessarily would have cleared the intersection in the four seconds before the light turned to red. The intersection measured approximately 80 feet from the curb on the north side of Gentilly Boulevard to the curb on the south side. A motorist traveling at 30 miles per hour covers 44 feet in one second or 176 feet in four seconds. Thus, if the speed estimate by Mrs. Black and her witnesses is correct, and if she passed the north curb just as the light turned yellow (her testimony being that the light was then still green), then she would have been 96 feet past the south curb when the light turned red for Franklin Avenue and simultaneously turned green for Gentilly Boulevard traffic.
In the light of these physical facts and mathematical calculations based on the evidence provided by Mrs. Black herself, it necessarily follows that the accident could have occurred as she testified only if Webb had started up from the stopped position while the light was still red for Gentilly Boulevard traffic and at least a few seconds before the light turned green in his favor. As previously stated, we cannot find manifest error in the trial judge's resolution of the conflicting testimony to reach the opposite conclusion.
Moreover, there was expert testimony to support the conclusion that, if Webb waited for the light to turn green, Mrs. Black necessarily entered the intersection on a red light. An engineer measured approximately 31 feet from the west side of the pedestrian crosswalk on Gentilly Boulevard (where most witnesses placed Webb's car in the stopped position[2]) to the approximate point of impact established by all witnesses. He then calculated the coefficient of friction, adjusting the minor variables in Mrs. Black's favor, and finally calculated that the fastest possible time within which Webb's vehicle could reach the point of impact at maximum acceleration from the stopped position was 2.37 seconds.[3] Assuming Webb started as soon as the light turned green and reached the point of impact in 2.37 seconds (during which time the light was green for Webb and red for Mrs. Black), he then determined Mrs. Black's location 2.37 seconds before impact, the time at which the light turned red for her. Since she would have traveled 86.6 feet in 2.37 seconds at 25 miles per hour, he calculated that Mrs. Black at that speed would have been within the Franklin Avenue crosswalk on the north side of the intersection when the light turned red and an additional 146 feet back down the street *360 four seconds earlier when the light turned yellow.[4]
However, Mrs. Black attacks the engineering calculation in several respects. We agree that this expert's testimony was incomplete in several particulars, such as an explanation of his calculation of the coefficient of friction. Nevertheless, the primary factor in our affirming the trial judge's determination of liability was his acceptance of testimony that Webb left the stopped position only after the light turned green in his favor and his rejection of conflicting testimony. Great weight must be given the trial judge's resolution of conflicting testimony on an issue of fact, particularly where the credibility of witnesses is involved.[5] Once this crucial fact was established, it became obvious that Mrs. Black could not also have entered the intersection on a green light at her stated speed. The engineer primarily aided in supporting the less obvious conclusion that she entered on a red light rather than yellow.
Finally, the other appellants contend that even if Mrs. Black was negligent in entering the intersection, Webb should not have proceeded into the intersection from his point of safety while his view was obstructed. Appellants cite several cases which hold that a driver stopped for a red signal light must, upon the light turning green, allow sufficient time for a vehicle which entered in the intersection on a yellow light to clear the intersection.
That argument is inapplicable in this case, which does not present a situation of clearing traffic already in the intersection before the light changed. The rule which allows a motorist under those circumstances to complete the crossing of the intersection necessarily implies that crossing was legally begun. See R.S. 32:232(2) (a). At Mrs. Black's stated speed, if she had entered the intersection legally, she necessarily would have cleared the intersection before a vehicle (starting when the light turned green for Gentilly Boulevard traffic) could have reached the point of impact.
In these days of heavy and congested vehicular traffic on the highways, a motorist is to a large extent compelled to operate his car on the belief that the law will be obeyed by others. Youngblood v. Robison, 239 La. 338, 118 So.2d 431 (1968). Stated otherwise, a motorist is not bound to anticipate that a traffic signal will be ignored. This is not to say that the very instant a traffic light turns green, a motorist can immediately move out from a stopped position in callous disregard for the circumstances existing in the intersection. But it is only in exceptional circumstances where the motorist entering the intersection on a favorable signal could have avoided the accident by exercising the slightest degree of observation and care will he be found negligent. Bourgeois v. Francois, 245 La. 875, 162 So.2d 750 (1964). Here, Webb ascertained by general observation of the intersection that there were no cars legally within the intersection when the light turned green in his favor. He had no duty to anticipate that Mrs. Black would enter the intersection after the light turned green in his favor and would be in his path of travel several seconds later.
Since the trial court award to Mrs. Correge exceeds the policy limits of her uninsured motorist coverage, her counsel concedes that it is unnecessary for us to review her argument for an increase in the *361 award in the absence of a reversal as to the liability of other parties.
The judgment is affirmed.
Affirmed.

ON APPLICATION FOR REHEARING
The applications for rehearing indicate we have not clearly stated our view of the duty of a motorist when a traffic light turns green in his favor after he has been stopped in obedience to a previous red signal.
It is important to remember that at the very instant the light turns green for the motorist under consideration and red for motorists on the cross street, the light has already shown a yellow warning signal to the latter motorists for four seconds (according to the sequence in the present case). Therefore, the motorist on the cross street has been warned not to enter the intersection at a point in time four seconds before the stopped motorist receives any indication that he can enter that intersection and perhaps several more seconds (according to the size of the intersection) before the favored motorist can react to the green light, move forward from a completely stopped position, and drive the distance between the point where he was stopped and the point where he encounters cross traffic.
The purpose of the yellow warning signal is not only to provide a warning that the light is about to change to red, but also to provide a period of time for traffic entering the intersection just as or just after the light turns yellow to clear the intersection before the green light flashes for opposing traffic. If the burden is placed on the motorist in whose favor the light turns green to keep a lookout for traffic which blatantly disregarded the yellow warning signal, then the function of the yellow caution light will be frustrated. Traffic lights, instead of serving to facilitate the movement of traffic, would then serve to deter its movement.
Considering these factors and the holding of the Bourgeois case,[1] we thus state Webb's duty under the facts and circumstances of the present case: When the light turned green in Webb's favor, he was obliged to make a general observation of the intersection and to allow traffic already in the intersection at the time of the light change to complete the crossing thus begun. He was not obliged to look further down the cross street for traffic then approaching but not yet within the intersection at the time of the light change.
Inasmuch as the Black vehicle had not yet entered into the intersection when the light changed to green in Webb's favor, Webb owed no duty to Mrs. Black or to her passenger to delay his forward motion or to anticipate that Mrs. Black would disregard first the yellow and then the red signal.[2]
The applications are denied.
NOTES
[1] The indicated position of the cars at impact is not consistent with the evidence, which established that the Webb vehicle struck the right rear of the Black car.
[2] One of the teenage pedestrians stated that Webb was "close to the corner", but on cross examination admitted that he didn't remember seeing Webb in the stopped position.
[3] The truck driver and pedestrian estimated four to five seconds between the light change and the collision.
[4] The engineer also performed these calculations at higher speeds, obviously moving Mrs. Black's location at the light change further away from the intersection as the speed factor increased.
[5] In his reasons for judgment the trial judge remarked that he "was very much impressed with the testimony of the witnesses presented by the defendant."
[1] Perhaps stronger than the language in the Bourgeois case was the holding, which determined non-negligent a motorist who, while waiting in the left turn lane of the neutral ground for a left turn signal, actually faced and saw a fast approaching vehicle, but nevertheless, when the left turn arrow appeared, commenced his turn without ascertaining that the oncoming vehicle would stop.

Certainly, the Bourgeois case is inconsistent with the case of Thomas v. Roberts, 144 So. 70 (Orl., La.App.1932), relied on by the applicants, and we deem Thomas impliedly overruled by Bourgeois.
[2] The important consideration is not that Mrs. Black almost made it into the intersection before the light turned red, but rather that (according to the credibility determination by the trial court) she disregarded the yellow caution light four seconds earlier when she was 176 feet away from the intersection.