611 So.2d 704 (1992)
Joseph CAGE
v.
Chavez CARUSO and City of New Orleans.
No. 91-CA-1692.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
*705 Nat G. Kiefer, Jr., Kiefer, Kiefer & Schneider, New Orleans, for plaintiff-appellee Joseph Cage.
Marie A. Bookman, Deputy City Atty., Brett Prendergast, Chief of Civ. Litigation, Kathy Lee Torregano, Chief Deputy City Atty., William D. Aaron, Jr., City Atty., New Orleans, for defendants-appellants Chavez Caruso and City of New Orleans.
Before SCHOTT, C.J., and KLEES and WALTZER, JJ.
KLEES, Judge.
Plaintiff, Joseph Cage (Cage) instituted suit against Chavez Caruso (Caruso), and the City of New Orleans to recover damages sustained in an automobile accident which occurred on March 27, 1987, in New Orleans, Louisiana. The trial court found the defendants sixty-six and two thirds percent (66 2/3%) at fault and the plaintiff thirty-three and one third percent (33 1/3%) at fault in causing the accident. The trial court rendered judgment in favor of Cage and against the defendants in the sum of $124,007 for general and special damages subject to reduction for the percentage of fault attributable to Cage. From this judgment, the defendants appeal and the plaintiff answers. After reviewing the facts and applicable law, we amend the trial *706 court's allocation of fault, and affirm the decision as amended.
The accident in question occurred at the intersection of Wisner Boulevard and Harrison Avenue at approximately 6:00 a.m. on March 27, 1987. Wisner Boulevard is a four-lane thoroughfare with two northbound and two southbound lanes separated by a neutral ground. Harrison Avenue is a two-lane thoroughfare with one westbound and one eastbound lane also divided by a neutral ground. Traffic at this intersection is controlled by a semaphore traffic signal which was operating properly on the morning of the accident.
Immediately prior to the accident, Cage, then age 57, had been traveling in a westerly direction on Harrison Avenue on his way to work at the Flower Gate Apartments. At trial, he testified that when he was either a quarter or three quarters of a block away from the intersection he noticed that the light was green[1] and that the light remained green when he actually entered the intersection. Cage testified that when he entered the intersection, it was clear of other traffic and he proceeded to traverse the northbound lanes of Wisner Boulevard and the neutral ground. As Cage began to traverse the southbound lanes of Wisner, his vehicle was struck on the right-hand passenger side by Officer Caruso.
On the morning of the accident, Caruso, a New Orleans Police Officer, was operating a police vehicle in the line of duty. Officer Caruso and his partner, Officer Darryl Dean were working the midnight to 7:00 a.m. shift and were responding to a supervisor's order to return to the police station. Caruso testified that he was traveling south in the left-hand lane of Wisner Boulevard at about 30 to 35 miles per hour. Caruso stated that when he was about twenty yards from the intersection, he noticed that his light was green and that the light remained green when he entered the intersection. Officer Dean, who was a passenger in the police vehicle at the time of the accident, was not called at trial to support Caruso's testimony.
After the accident, the record shows that Cage was transported to Veterans Administration Hospital's emergency room where he received forty stitches for a laceration to his head. Cage testified that on the day following the accident, he went to a Dr. Condie with chief complaints of pain in the neck, right shoulder, and upper right arm. Dr. Condie treated Cage's cervical injuries conservatively for approximately eight months after the accident. This treatment is undocumented because Dr. Condie is now deceased, and his patient records were destroyed by an office fire. Thereafter, Cage was treated by Dr. John Olson, a neurologist, and Dr. Kenneth Adatto, an orthopedic surgeon. Dr. Adatto has been Cage's treating physician since July of 1990. At trial, Dr. Olson and Dr. Adatto established that Cage sustained a ruptured disc at the C5-6 level. Both physicians attribute this injury to the accident in question, based upon the history given by the plaintiff.[2]
In the reasons for judgment, the trial court found that Cage sustained a ruptured disc in the accident and apportioned the fault one-third to the plaintiff and two-thirds to the defendants. The trial court found that adequate compensation for the plaintiff would be $100,000 general damages, $4,007 past medical expenses, and $20,000 future medical expenses.
On appeal, defendants argue that the district court committed manifest error by assigning them two-thirds of the fault and awarding excessive general damages and future medical expenses. Cage answered the appeal arguing that the judgment should be reversed insofar as the judgment reduces his recovery by one-third.
The trial court's allocation of liability and damage award are factual findings which are afforded great deference by appellate *707 courts. This standard of review is summarized by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990):
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Citations omitted.
Id. at 844.
Manifest error may be found where objective evidence contradicts the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story. If these factors are present, the appellate court may find manifest error even in a finding purportedly based on a credibility determination. Rosell, supra at 844-845. However, when these factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or two of the witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, supra at 845.
This Court will first evaluate the trial court's apportionment of fault between the parties. Cage argues that the trial court's findings, the physical facts, and testimony demonstrate that he had the benefit of a green light at the time of the accident; and accordingly, he conformed with the general duties of a motorist with the benefit of a green light. Under Louisiana law, Cage was entitled to assume that traffic approaching the intersection on a red light will comply with the signal and respect his right of way. Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir.1973), writ denied, 286 So.2d 664 (La.1973). Cage's only duty upon approaching a green light is to make a general observation of the intersection and to allow traffic already in the intersection at the time that the light changes to complete the crossing thus begun. Correge, supra. Because Cage conformed with his legal duties, he argues that the trial court abused its discretion in attributing one-third of the fault to him.
The initial problem upon review is that the trial court did not specifically determine whether Cage had the benefit of the green light at the time of the accident. The trial judge attributed a greater degree of fault to the defendants, indicating that he credited the plaintiff's account of the accident over the defendants' version. However, there are several known factors which help to evaluate the determination of the trial court.
Since the semaphore traffic signal was operating properly at the time of the accident, one of the parties necessarily had the benefit of a green light. Implicitly, the trial judge found that Cage had the benefit of the green light. Cage, as one entering an intersection on a green light, only had the duty to allow traffic already in the intersection to complete the crossing. Correge, supra. According to the physical evidence at the scene of the accident, Cage had almost traversed the entire intersection before Officer Caruso's vehicle entered the intersection and broadsided Cage. Even if Cage had observed the police vehicle approaching the intersection, he was entitled to assume that Officer Caruso would stop his vehicle. Correge, supra.
In summary, it appears that although the trial judge determined that Cage entered the intersection with the benefit of a green light, he assessed one-third of the fault to him. In so doing, the trial judge was clearly wrong under the facts of this case. Cage did not have a duty to observe oncoming traffic; rather, he was entitled to assume that Caruso would stop his vehicle. Therefore, he may not be assessed with a degree of fault in causing this accident. Accordingly, the determination of fault herein will be amended to show that the defendants were one hundred percent at fault in causing this accident.
Next this Court will address whether the trial court's assessment of the general and special damage award constituted manifest error. The defendants argue that *708 Cage is not entitled to damages because he has failed to prove that his cervical injuries were a direct result of the accident in question. Under Louisiana law, a plaintiff's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that the medical evidence establishes a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991), citing, Lucas v. Insurance Co. of N. Amer., 342 So.2d 591 (La. 1977).
Cage denies having a history of cervical disease or treatment, and he asserts that his cervical problems arose immediately after the accident in question. Both physicians testifying at trial confirm that based upon this history, the ruptured disc at the C5-6 level was caused by the accident in question. When evaluating the testimony of experts, the trial court must apply the same principles that apply to other witnesses and has great discretion to accept or reject medical opinion. Whitacre v. Halo Optical Products Inc., 501 So.2d 994, 1001 (La.App. 2d Cir.1987). Therefore, the trial court was acting within its discretion in accepting the medical opinions and finding a causal connection between the accident and Cage's injuries.
The defendants argue that the plaintiff has failed to prove causation because the plaintiff did not offer any evidence to account for his medical treatment during the eight months immediately following the accident. Additionally, the defendants point to Dr. Olson's testimony indicating that there are alternate causes for the type of injury suffered by Cage; these include aging, arthritis, or other degenerative diseases. However, even after considering these alternate possibilities, both Dr. Olson and Dr. Adatto agree that it is more probable than not that the injury was caused by the March 27, 1987 accident, and the trial court implicitly accepts this explanation. Given this evidence, the trial court was not manifestly wrong in accepting the explanation of the two testifying experts.
In the alternative, the defendants argue that the trial court abused its discretion in awarding excessive damages. First, defendants argue that general damages of $100,000 are too high for a ruptured disc at the C5-6 level. Second, defendants argue that the plaintiff did not adequately prove the need for or the cost of future medical treatment, for which the trial court awarded $20,000.
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. La.C.C. art. 1999. Before an appellate court can disturb a damage award made by the trial court, the record must clearly reveal that the trial court abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). Only after analysis of the facts and circumstances peculiar to the case at issue may a reviewing court determine that the award is excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La. 1979). Once this determination is made, the appellate court may resort to prior awards for purposes of calculating what would be an appropriate award for the present case. Reck, supra.
Accordingly, the record has been reviewed to determine whether it supports an award of $100,000 in general damages for pain and suffering and disability arising out of a ruptured disc at the C5-6 level. Cage testified that he has suffered with neck pain extending through his right shoulder and arm since date of the accident. After eight months of unsuccessful conservative treatment, Cage saw Dr. Olson, a neurologist, with chief complaints of neck and right shoulder pain and right arm weakness. Dr. Olson performed an EMG and diagnosed Cage's condition as a C5 radiculopathy. Because Cage's prognosis was poor, Dr. Olson recommended that Cage see an orthopedic surgeon. However, Cage did not seek orthopedic care until July of 1990. Cage testified that he waited this long because he attempted to hold out due to his fear of doctors, but he broke *709 down because the pain would not subside. Dr. Adatto confirmed Dr. Olson's findings of a ruptured disc at the C5-6 level and testified that Cage suffers 10% to 15% permanent disability as a result of this injury.
In spite of the pain, Cage continued his maintenance work full time in order to prevent losing his job. Both Dr. Adatto and Dr. Olson realized that Cage needed to continue working and recommended that Cage exercise care by protecting his neck while performing his duties. Dr. Adatto testified that Cage needed to protect himself from prolonged standing or sitting, stooping or bending or lifting of objects over 25 pounds. Both Dr. Adatto and Dr. Olson agree that Cage will suffer from these disabilities and pain for the rest of his life and will probably require surgery in the future. Considering all of the evidence in the record, we conclude that $100,000 general damages for a ruptured disc, resulting in up to 15% disability, is within the trial court's discretionary range and for this reason, we need not reach an analysis of prior awards to determine an appropriate award.
As for the future medical award, the defendants argue that there is no indication that Cage will need future medical care, and there has not been an estimate of these future expenses. Future medical awards are speculative and not susceptible of mathematical certainty. However, like every element of special damages, future medical costs must be established with some degree of certainty. Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost. Durkee v. City of Shreveport, 587 So.2d 722, 731 (La.App. 2d Cir.1991), writ denied, 590 So.2d 68 (La.1991). Both Dr. Adatto and Dr. Olson agree that it is probable that Cage will require surgery in the future given his age and his failure in the past to respond to conservative treatment. Additionally, at trial Dr. Adatto, Cage's treating physician, projected that the cost of the surgery would be $15,000 plus or minus fees. Given the totality of the evidence, we cannot find that the trial court was clearly wrong in finding sufficient medical testimony that Cage will probably need surgery in the future.
For the foregoing reasons, the trial court judgment is affirmed in part, amended in part.
AFFIRMED IN PART, AMENDED IN PART.
NOTES
[1] Cage testified on direct examination that he was three quarters of a block away from the intersection when he noticed that the light was green. However, on cross-examination he testified that he was only a quarter of a block away when he noticed the light.
[2] Cage denies that he had any injuries or treatment to the affected areas prior to the accident on March 27, 1987.