h SAUNDERS, Judge.
In this medical malpractice action, the jury found a medical corporation consisting of ten anesthesiologists ninety (90%) percent liable and the hospital ten (10%) percent liable for plaintiffs epidural abscess and spinal meningitis and awarded plaintiff $30,000.00 in general damages plus medical specials of $36,000.00.
While this appeal was pending, plaintiff Angela Bush and defendants, Schumpert Medical Center and Medical Center Anesthesiologists, settled all issues except quantum, of which plaintiff complains. On this remaining issue, we amend the $30,000.00 general damage award to $125,000.00, the lowest legally permissible award.

PROCEDURAL HISTORY

Plaintiff brought this action against the Sisters of Charity of the Incarnate Word d/b/a Schumpert Medical Center (Schum-pert), Dr. Robert A. Robertson (“Dr. Robertson”), Dr. Gary Madden (“Dr. Madden”), Medical Center Anesthesiologist, Inc. (“MCA”), and Preferred Physicians Insurance Company, the doctors’ and MCA’s insurer, for the damages alleged to have resulted from defendants’ negligence.[1]
After a week-long trial by jury, a special verdict form was returned by the jury with responses to four questions. The jury concluded that the anesthesiologists had obtained informed consent from Angela Bush for the epidural procedure and that neither Dr. Robertson nor Dr. Madden violated the standard of care required of them in the treatment rendered to Angela Bush; however, the jury did find negligence as to MCA and Schumpert, apportioning the fault 90% to MCA and 10% to Schumpert. The jury further awarded plaintiff general damages of $30,000.00 and medical expenses of $36,-000.00 for a total of $66,000.00.
The parties having stipulated to the jury’s liability determinations, we consider plaintiffs final contention, that her general damage award of $30,000.00 was too low under the circumstances.

FACTS

On September 4, 1990, 23 year old Angela Bush was admitted to Schumpert Medical Center in Shreveport, Louisiana, to have her second baby. The baby was delivered by Caesarian section. Prior to the child’s delivery, Angela was given an epidural block for her anesthesia. As stated in plaintiffs brief, to perform the block, the anesthesiologist, in this case Dr. Robert Robertson, used a kit containing items manufactured and purchased for that purpose. Using the kit’s components, the doctor ^sterilizes a portion of the patient’s back with betadine and uses a pencil lead sized needle to inject medication into the patient’s back near the spinal cord to anesthetize the region. Eventually, the syringe is detached from the needle and a plastic catheter was threaded through the needle into the patient’s back to enable a pump to infuse pain medication.
As a consequence of defendants’ conceded negligence, plaintiff Angela Bush sustained an epidural abscess in her spinal column and spinal meningitis. The sole question before us is whether plaintiffs general damages award is too low.

QUANTUM

According to Mrs. Bush, her reaction to . the epidural block began while she was still in Schumpert. When she awoke from surgery, her legs felt “numb and heavy.” She was advised by her nurse that the sensation would pass once her epidural catheter was removed. The catheter had been inserted in her back Wednesday morning and removed two days later, on Friday morning. Plaintiff further indicated at trial that she had back problems and problems with light sensitivity while she was in the hospital.
When she returned home a few days after her baby was born, on September 8, plaintiffs symptoms continued and apparently worsened. She took the pain medication she *1175 was prescribed, but still could not sleep due to the pain. When she awoke at home September 9, the pains she was experiencing required her to call her mother to pick up her two children, including the newborn.
Plaintiff returned to the hospital thirty hours later with an epidural abscess, an infection that developed into spinal meningitis. There, physicians performed a laminectomy affecting three levels of her lower back and drained and treated the abscess. According to Dr. Coughlan, a specialist in infectious diseases who treated Mrs. Bush when she was admitted the second time, Ms. Bush was experiencing back pains, having trouble “passing water,” had not had a bowel movement in several days, |4and had abnormal feelings in her legs suggestive of neural involvement, dizziness, and light sensitivity, in addition to headaches.
When Ms. Bush was sent home the second time, she remained very sick, receiving intravenous antibiotics from nurses affiliated with a Natchitoches home health care service. In her 13 years of nursing, Registered Nurse Odom had never seen a patient with complications from an epidural abscess of the magnitude suffered by plaintiff. When Nurse Odom initially assessed plaintiff at her mother’s home, plaintiff was in bed and appeared to be very depressed. She also appeared to be in considerable discomfort due to infection and necessarily invasive procedures performed to correct the effects of her epidural abscess.
Plaintiff complained to the nurse of her difficulties with urination and constipation.
Urination required plaintiff to sit on the commode for five to ten minutes before commencement and its limited success was attributable to gravity. Her discomforts were compounded by the feeling that she could not fully empty her bladder.
To address her problems with constipation, Ms. Bush was required to take laxatives regularly, in addition to an occasional enema. When the nurse returned the second day, she gave Ms. Bush an enema “with poor results” and found the abdominal area soft and undis-tended, with very sluggish bowel sounds.
On the third consecutive day, Nurse Odom had to visit plaintiff twice, the second time because excessive use of one arm required her to move the TV to the other. Ordinarily, according to Nurse Odom, only three consecutive days’ visitation are required before less frequent contacts are appropriate, but in this ease, she was required to go to visit a fourth day. Plaintiffs complaints of urination and constipation continuing, the nurse advised plaintiff to keep emptying her bladder by gravity. When her examination of plaintiff for a fecal impaction, a plug of hard stool, revealed |sno impaction, Ms. Bush was advised to eat a high fiber diet, in addition to taking laxatives.
Nurse Odom returned again October 2, three or four days later. Plaintiff was very weak and depressed. When the nurse saw that the veins in plaintiffs arms could tolerate no more intravenous care, plaintiff was again required to return to Shreveport, this time to have a doctor cut her jugular vein and insert tubes in her neck to administer the intravenous antibiotics through the main artery of plaintiffs neck.
Plaintiffs complaints concerning the bladder, bowel, numbness in the lower extremities and general discomfort continued when Nurse Odom visited with plaintiff three days later.
In fact, plaintiffs complaints continued through November 17, 1990. On this date, Nurse Odom removed the central line, advised plaintiff how to detect complications, and discharged her from the home health service.
The nurse indicated that plaintiff seemed quite sincere in her efforts to improve her health through exercise but to no avail, exacerbating her depression. According to the nurse, plaintiff indicated that she wanted to return to work at least part-time; although she was still having problems with her bowels and her bladder and some (although less) numbness and tingling in her lower extremities.

RESIDUAL COMPLAINTS:

Plaintiff maintains that the physical and emotional strains she was forced to endure by defendants’ negligence between Septem *1176 ber 4, 1990, and November 17, 1990, alone render inadequate the jury’s general damage award. She further claims that any lingering question as to the award’s inadequacy should be dispelled by the lingering effects on her of defendants’ negligence. As to these longer-term effects, in brief plaintiff maintains that the testimony of Dr. Martinez, in addition to her own, corroborates her case for greater damages than those awarded.
| (¡Defendants dispute the duration of plaintiffs injuries. They make great issue of the fact that plaintiffs motor function had improved and that in January and February, 1992, she made no complaints concerning her bowels or bladder.
Quoting Dr. Martinez’s trial testimony concerning an October 11,1991, visit, defendants maintain that as of that date, plaintiff continued to have complaints of lumbar area pains as well as some numbness and tingling in the right leg, but mentioned nothing about the bladder or bowel. The doctor also indicated that her neurological examination showed that her strength was normal. He could not detect any weaknesses in the right leg. When she returned to see Dr. Martinez on January 27, 1992, her motor function was completely normal and she was able to walk on her toes and heels. Defendants also underscore Dr. Martinez’s expectation as of February 1992, 15 or 16 months after her surgery, that plaintiffs bowel and bladder situation would have been either static or improved with time.

ANALYSIS

“A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’ Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127. (La.1987).
“This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
“Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley 7Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45.”
Stobart v. State, Through DOTD, 617 So.2d 880, 882-83 (La.1993).
This exacting analysis is also required of appellate tribunals called to examine factual disputes as to quantum. “Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.” Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976) and cites therein.
*1177 “Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1984(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 358 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present ease.”
(Footnote omitted.)
Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
“The trier of fact is granted much discretion in the award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really |Rbe measured definitively in terms of money. Civil Code Article 1934(3) and the decisions to be cited below.
“Our jurisprudence has established certain principles of review of such awards by the appellate courts, in their performance of the fact-review function assigned to them by the Louisiana constitution. La. Const. Art. VII, Sections 10, 29 (1921, as amended in 1958). These principles, as extensively summarized recently in Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974), include:
“The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.
“See: Bitoun v. Landry, 302 So.2d 278 (La.1974, docket number 54,634); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974); Boutte v. Hargrove, 290 So.2d 319 (La.1974); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La.1973); Walker v. Champion, 288 So.2d 44 (La.1973); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Lomenick v. Schaeffler, 250 La. 959, 200 So.2d 127 (1967); and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).”
Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351, 352-353 (La.1974).
Our exhaustive review of the pertinent portions of the transcript, specifically including those portions cited in defendants’ brief, leaves absolutely no question that plaintiff is entitled to greater relief. Defendants offered nothing to counter the evidence presented by plaintiff concerning the long-term damages associated with her debilitated lower right body,
Plaintiff was only awarded $30,000.00 in general damages, which is patently unreasonable to the victim who must endure invasive procedures, pain, suffering, | gdependence and unemployability, day in and day out, for so long. Defendants are accountable not only for the prolonged malaise, but for the need for invasive surgeries and intravenous feedings, incontinence, constipation, lost wages, and mental anguish occasioned by defendants’ negligence.
We believe that $125,000 is the lowest reasonable amount under the circumstances, even taking into account the great and even *1178 vast discretion owed the factfinder in quantum determinations. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
Defendants now, as at trial, argue that plaintiff’s failure to show the longevity of some of her injuries somehow precludes her from an award to compensate her fully for the damages of longer duration that were clearly demonstrated. The jury, evidently persuaded by defendants’ remonstrations that plaintiff failed to establish that each and every one of her alleged injuries persisted, failed to award plaintiff a total damages award sufficient to compensate plaintiff adequately for all of plaintiffs injuries. We find clear error on its part in doing so, for a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993) (collecting cases); Thames v. Zerangue, 411 So.2d 17 (La.1982); Thibodeaux v. Winn-Dixie of Louisiana, 608 So.2d 673, 675 (La.App. 3d Cir.1992).
“Every act of man that causes damage to another obliges him by whose fault it happened to repair it. La.Civ.Code art. 2315. One injured through the fault of another is entitled to full indemnification for damages caused thereby. Coleman v. Victor, 326 So.2d 344 (La.1976); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). In such a case, ‘[t]he obligation of defendant ... is to indemnify plaintiff — to put him in the position that he would have occupied if the injury complained of had not been inflicted on him.’ Coleman v. Victor, supra, at 346, quoting, Lambert v. American Box Co., 144 La. 604, 10613, 81 So. 95, 98 (1919). See also, Ayala v. Bailey Elec. Co. Inc., 318 So.2d 645 (La.App. 4th Cir.1975).”
Roman Catholic Church v. Louisiana Gas, 618 So.2d 874, 876 (La.1993). Plaintiff was entitled to full relief for all of the injuries proven to have been sustained at the hands of defendants, regardless of her inability to prove by a preponderance of the evidence each and every one of the injuries she alleged.
By defendants’ own argument, Dr. Harvey Martinez of Shreveport, plaintiffs treating neurosurgeon, was “[t]he only witness called by plaintiff who had any potential for corroborating her residual complaints.” In light of his testimony, they maintain that plaintiff is entitled to no relief for any permanent damages. However, this argument is not convincing, as defendants produced no evidence at all to refute the duration of plaintiffs injuries, and nothing could be more clear to us than the fact that Dr. Martinez did corroborate plaintiffs testimony that some of her injuries could be expected to persist beyond trial
A board certified neurosurgeon, Dr. Harvey Martinez, first saw plaintiff at the request of Dr. Ray Coughlan September 17, 1990. Reviewing plaintiffs medical charts, he obtained plaintiffs history of having a C-Section on September 5, 1990, and returning on September 9,1990, with headaches, vomiting, photophobia, and back pain. Although his appreciation was that plaintiffs meningitis had improved somewhat, he was consulted to determine whether plaintiffs continuing back pains, numbness and tingling in the right lower extremity, associated with weakness in the right leg, related to a problem with the spinal canal. From examining the charts and plaintiffs condition September 17, and noting weakness in both legs, Dr. Martinez’s initial diagnosis was of an infection in the spinal canal. Although her initial MRI of the lumbar area appeared normal, a second MRI revealed neurological deficits and evidence of infection in the spine requiring immediate action. Dr. Martinez prescribed | usóme anti-inflammatory steroids to prevent further damage, in addition to the antibiotics plaintiff was already receiving.
Dr. Martinez was required to perform surgery on plaintiffs back and did so less than 48 hours later. The doctor drained the infection and decompressed the nerves by performing a laminectomy to remove some of the bone of the spinal canal using several drills and a microscope. The permanently removed bone comprised part of the spine’s protective system. Bones were removed bone comprised part of the spine’s protective system. Bones were removed from L2, L3 and L4. For a few days following the invasive procedure, drains were left in plaintiffs *1179 back to permit the discharge of fluid and reduce the likelihood of another infection.
Dr. Martinez next saw plaintiff October 1, 1990. She was still complaining of weakness and tingling in the right leg associated with numbness on the perineum. His neurological examination on that date indicated continuing “weakness on the right lower extremity, primarily involving the flexion of the foot” and “absence” of reflexes, including in the right aehilles. Dr. Martinez observed “some evidence of sensory loss [a]flfecting several nerve roots primarily on the right side and only one nerve root on the left side” and objectively noted the absence of aehilles reflex by striking the back of plaintiffs heel with a rubber hammer.
Dr. Martinez’s observations of continuing nerve root involvement were consistent with plaintiffs complaints of problems with her lower right side. He indicated that the nerve roots affect the entire region, including the inner part of the buttocks, inner and outer part of the vagina and inside of the thigh.
When Dr. Martinez next saw plaintiff on October 24, she indicated significant improvements in term of strength in the right lower extremity, but complained of continuing difficulty in her bowels and urination. Since her lack of feeling in the lower right region remained “essentially unchanged,” Dr. Martinez advised her to return in two months.
_[igOn November 19, plaintiff was still improving in terms of motor function and strengthening of the right leg, but was still complaining of difficulties with the bowels and urination. Plaintiff further complained of lack of sensation for sexual activities, in addition to discomfort in the surgical site. Although her neurological examination showed some improvement, her right heel reflex was still absent and the sensory examination, “essentially unchanged, demonstrated continuing lack of sensation in her lower right region.” Plaintiff was still limping.
When Dr. Martinez saw plaintiff two months later, January 21, 1991, as defendants point out, continuing improvements in her motor function and neurological deficit were noted. However, this was only part of the picture. Dr. Martinez too noted plaintiffs lack of stamina, which he attributed to “the weakness on the right side.” He further noted that Ms. Bush’s aehilles reflexes remained absent. Moreover, she “still showed no change in terms of the sensory in the same distribution.” Finally, he observed that plaintiffs bladder, bowel and sexual complaints continued.
By May 31, plaintiff was still complaining of numbness to the lower right regions and of discomforts related to the bladder, bowel and sexual function. Her neurological examination showed “a very mild weakness on the right lég,” her sensory perception was “essentially unchanged,” and her reflex still “absent.”
When Dr. Martinez saw plaintiff again October 11,1991, plaintiff continued to complain of pain in the lumbar area, as well as numbness and tingling in the right leg, but mentioned nothing about the bladder or bowel. Her neurological examination showed that her strength was normal and no weakness could be detected in the right leg. However, her sensory deficits still persisted, requiring her to return in six months.
On January 27, 1992, plaintiffs principal complaint concerned a small lump or nodule on the left side of the scar, which was not there before. He saw “no numbness or tingling other than what she already [had],” and no fever or other | ^symptoms suggestive of a major infection. Although a nuisance, the nodule, as it turned out, was not symptomatic of a larger problem.
On February 3, 1992, the nodule appeared smaller and the strength in plaintiffs lower extremities normal. This was the last time Dr. Martinez saw Angela Bush as his patient.
Defendants implicitly seize upon plaintiffs discharge by Dr. Martinez as evidence that none of her injuries were long lasting; however, we note the doctor’s observation that “[t]he reflex was still absent in the right aehilles, sensory unchanged.” In addition, we point out that on redirect, Dr. Martinez admitted that he could not recall whether he asked plaintiff about her bowel and bladder problems; he further stated that if, as of date of trial, plaintiff still had bowel and *1180 bladder problems, as well as loss of sexual sensation, he would expect those losses of function to be permanent.
At trial, plaintiff too testified in support of the contention that her injuries were longer lasting. She indicated that her bladder and bowel problems persisted, that her back continued to hurt, that her right side was still numb, and that she occasionally suffered from depression. She further indicated that she had an episode of bed wetting only three or four months before trial.
In an oblique effort to refute plaintiffs trial testimony, defendants ask that we presume with them that plaintiff had no enduring malady because she sought testimony from no other witnesses to corroborate each item of her alleged damages; they ignore the fact that they too could have issued a subpoena to require the testimony of other witnesses.

LOWEST REASONABLE AWARD:

Having found clear error on the part of the jury, we now must decide the lowest reasonable award under the circumstances. Coco, supra.
I i4“[P]rior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) ‘similar’ injuries, see Coco at 341 So.2d 334.”
Reck, supra, at 501.
In brief, plaintiffs cite several cases in support of their position that an award of $125,000.00 to $412,500.00 is justified. Labit v. Setiff, 489 So.2d 942 (La.App. 5th Cir.), writ not considered, 491 So.2d 381 (La.1986) (untimely) refused to reduce an award of $375,000.00 for pain and suffering, where the weakened status of both legs precluded even sedentary employment and plaintiff demonstrated, with the aid of overwhelming evidence, that his injuries resulted in a profound depression marked by an abrupt personality change and inability to care for himself. In Morton v. Ray, 611 So.2d 841 (La.App. 4th Cir.1992), writ denied, 618 So.2d 404 (La.1993), the court reduced as excessive an award of $350,000.00 to plaintiff, who was required to undergo not only a laminectomy but a fusion, and who was determined to have a 25% whole body physical impairment. The court of appeal determined that $250,-000.00 was the highest amount plaintiff could receive under the Coco analysis. In Arruebarrena v. Boh Bros. Const. Co., 539 So.2d 78 (La.App. 4th Cir.1989), the court of appeal refused to upset a general damages award of $250,000.00 to a plaintiff unable to take pain relief medications who was suffering from a bulging disc that would require a fusion, not a laminectomy; the fusion would leave plaintiff 25% permanently disabled, whereas the laminectomy would have left him 15% disabled. Finwall v. Union Oil Co. of California, 551 So.2d 673 (La.App. 1st Cir.1989), raised an award for loss of sexual function from $25,000.00 to $125,000.00; it is distinguishable for the simple reason that for all her complaints, plaintiff in the case sub judi-ce had a third child between the date of her accident and trial. In Thomas v. Insurance Corp. of America, 621 So.2d 67 (La.App. 2d Cir.1993),is the reviewing court refused to adjust a jury’s general damages award of $412,500.00 to an individual who must wear diapers, who for the rest of his life will have to catheterize himself six times daily, and whose Herculean efforts to make himself independent were unable to overcome his substantial embarrassment and a depression marked by anger and bitterness.
The remaining case cited by plaintiff, Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3d Cir.), writ denied, 515 So.2d 807 (La.1987), bears facts strikingly similar to those of this ease insofar as the plaintiff, after reaching maximum medical improvement, still suffered from stiffness and pain in his leg, but differs somewhat insofar as the plaintiff could no longer return to work and too had problems with the side of his back. Most significantly, however, there the jury awarded plaintiff $400,000.00, and the appellate court found no clear error: unlike this panel, it was not required to adjust the award to the lowest reasonable amount as prescribed by Coco.
Considering plaintiffs case, we believe $125,000.00 is a fair award and the lowest reasonable one under the circumstances. *1181 See and compare, Willis v. Letulle, 597 So.2d 456 (La.App. 1st Cir.1992) ($75,000.00; lumbar disc; no disability rating assigned; one judge dissented, believing $75,000.00 inadequate); McLaughlin v. Schwegmann Supermarkets, 567 So.2d 165 (La.App. 4th Cir.1990) ($58,000.00; 20% permanent loss of function in lumber spine, lifestyle affected; no other injuries and able to return to work within weeks of injury); Cage v. Caruso, 611 So.2d 704 (La.App. 4th Cir.1992) ($100,000.00 not too high: ruptured disc at C5-6, and 10% to 15% permanent disability); Farque v. McKinney, 576 So.2d 1191 (La.App. 3d Cir.), writ denied, 580 So.2d 387 (La.1991) (award raised from $10,000.00 to $60,000.00; 10% total disability; no change in lifestyle reported); Touchard v. Williams, 606 So.2d 927 (La.App. 3d Cir.1992), quantum 16affirmed, 617 So.2d 885 (La.1993) ($100,000.00 affirmed); Thomas v. Petrolane Gas Service Ltd., 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992) ($85,-000.00; L4-5; myelogram and diskectomy); and Rivet v. LeBlanc, 600 So.2d 1358 (La.App. 1st Cir.), writ denied, 605 So.2d 1115 (La.1992) ($70,000.00 affirmed; 20% whole body disability; leisure life affected; no incontinence or constipation). This award, in addition to the medical special damages we affirm, should be sufficient to compensate plaintiff for the additional surgeries, the pains and anguish, the neurological deficits and decreased mobility (for the longer period unquestionably proven by plaintiff), and temporary disfiguration of plaintiff’s back.

CONCLUSION

The jury awarded plaintiff $30,000.00 in general damages. It abused its discretion in rendering so low a verdict for the past and future difficulties defendants’ negligence has forced plaintiff to endure. Having reviewed the portions of the record that are relevant to the sole issue before us, there is no question but that the jury’s award of general damages falls below the lowest permissible limit, which an examination of the complete record before us requires us, Gonzales v. Xerox Corporation, 320 So.2d 163, 166 (La.1975), to fix at $125,000.00. Coco, supra.

DECREE

For the foregoing reasons, the general damages awarded plaintiff is increased to $125,000.00, plus legal interest. In all other respects, the judgment of the trial court is affirmed. Defendants, Sehumpert and MCA, to bear all costs.
AFFIRMED AS AMENDED AND RENDERED.

. Two medical products manufacturers, Arrow International, Inc., and Burron Medical, Inc., were initially named as defendants, but dismissed prior to trial.